**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amada Estrada, ) | No. CV05-1540-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | [Not for Publication] |
| Social Security Administration, ) | |
| Defendant. ) | |

Before the court are Plaintiff's Motion for Summary Judgment (doc. # 14), Defendant's Response (doc. # 20) and Cross-Motion for Summary Judgment (doc. # 21), and Plaintiff's Response to Cross-Motion (doc. # 24) and Reply in Support of Motion for Summary Judgment (doc. # 25). Plaintiff Amada Estrada ("Estrada") filed this action challenging the Social Security Administration Commissioner's ("Commissioner") denial of her applications for Disability Insurance and Supplemental Security Income benefits. The court affirms the Commissioner's decision.

**I.      Background**

Estrada turned fifty years-old in August of 2004. (doc. # 15 at 2 at ¶ 2.) She has a fifth grade education obtained in Mexico and is unable to speak, read or write in English. (*Id.*) Her prior work experience consists of unskilled factory work and as a self-employed caregiver. (Tr. at 93.)

Estrada filed applications for Disability Insurance and Supplemental Security Insurance benefits in late 2002 (Tr. at 19), alleging a disability onset date of January 1, 2002.

1  (Doc. # 15 at 1:22-23.) Her applications were denied initially and upon reconsideration. (Tr.
2  at 19.) After proper notice, a hearing was held before an ALJ on May 21, 2004. (*Id.*) The
3  ALJ found that Estrada could perform her prior work as a machine operator and consequently
4  denied Estrada's applications. (*Id.* at 27.) The Appeals Counsel denied Estrada's request for
5  review. (*Id.* at 10.)

6  Estrada based her disability applications on three main medical problems. First and
7  foremost, Estrada has had persistent problems with her right knee. After originally hurting
8  her knee in Mexico, Estrada had arthroscopic surgery in July of 2001, after which she
9  underwent physical therapy. (*Id.* at 22.) Four months after the alleged disability onset date,
10 in May of 2002, Estrada had further knee surgery. (*Id.*) X-rays in January of 2003 showed
11 no acute fracture or dislocation and a metallic plate with two threaded screws that transfixed
12 the proximal tibia. (*Id.*) While continuing to ambulate with a crutch and to complain of pain,
13 progress notes in June of 2004 indicated that effusion had ceased and that Estrada retained
14 excellent range of motion. (*Id.* at 22-23.)

15 Second, Estrada has had intermittent shoulder pain for between one and two years.
16 (*Id.* at 20.) A magnetic resonance imaging scan on April 2004 showed a possible rotator cuff
17 tear as well as minimal osteoarthritis of the acromioclavicular joint. (*Id.*) She has been
18 diagnosed with rotator cuff tendinopathy and has undertaken physical therapy exercises to
19 address the issue. (*Id.*)

20 Third, Estrada suffers from depression. Although she has denied mental health
21 treatment, her general practicitioner prescribed her Lexapro for her symptoms. (*Id.* at 23.)
22 She has had sleeping problems and does not cook, do laundry, or clean the house. (*Id.*) She
23 spends most of the day listening to music and watching television. (*Id.* at 23-24.) The State
24 Agency medical consultant diagnosed her with a mild depressive disorder. (*Id.* at 24.)

25 Estrada has also complained of secondary medical problems. Estrada reports pain in
26 both hands. (*Id.* at 20.) Her hands evince mild degenerative changes about the distal
27 interphalangeal joints, although X-rays in January of 2003 were unremarkable. (*Id.*) Estrada
28

1  has also complained of back pain, although X-rays in April of 2003 were unremarkable. (*Id.*)
2  Upon examination there were no muscle spasms and straight leg raise was negative. (*Id.*)

3  **II.    Standard Of Review**

4  The court reviews only those issues raised by the party challenging the ALJ's decision.
5  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In its review the court "may set
6  aside a denial of disability benefits only if it is not supported by substantial evidence or if it
7  is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citations
8  omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence
9  is relevant evidence which, considering the record as a whole, a reasonable person might
10 accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44
11 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted). Such evidence is "more than a scintilla"
12 but "less than a preponderance." *Smolen*, 80 F.3d at 1279 (citations omitted). As a general
13 rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of
14 which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v.*
15 *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

16 **III.   Legal Standard**

17 Part 404.1520 of the Code Of Federal Regulations describes the five-step sequential
18 evaluation process used in determining whether a claimant is disabled. The five steps are 1)
19 whether the claimant is currently working, 2) whether the impairment is severe, 3) whether
20 the impairment meets or equals an impairment in Appendix 1 of Subpart P of the regulations,
21 4) whether the claimant can perform work performed in the past, and 5) whether the claimant
22 has the ability to perform other work. 20 C.F.R. § 404.1520(a)(4)(i-v). The questions are
23 addressed in order; certain responses to these questions will lead to automatic eligibility or
24 ineligibility. *See id.* In this case, the ALJ determined at step four that Estrada was not
25 disabled.

26 "At step four, claimants have the burden of showing that they can no longer perform
27 their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations
28 omitted). To decide whether a claimant has met her burden, the ALJ must make "specific

findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* at 845 (citing SSR 82-62). A claimant will be determined ineligible for benefits at step four if the claimant is found able to perform either "1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* at 845 (citing SSR 82-61). The ALJ here decided at step four that Estrada retained sufficient residual functional capacity to return to her particular past work as a machine operator.

**IV. Estrada's Past Relevant Work Was Consistent with Her Residual Functional Capacity as Determined by the ALJ**

As an initial matter, Estrada argues that even if the residual functional capacity determined by the ALJ was accurate, the ALJ erred in finding that residual functional capacity compatible with the demands of Estrada's specific past relevant work as a machine operator. Estrada relies on a check-box form filled out by her on October 8, 2002, nineteen months before her hearing, on which she indicated that her work as a machine operator required her to walk for three hours per day, stand for one hour per day, and sit for five hours per day. (Tr. at 93.) Given that the ALJ assessed Estrada's residual functional capacity as limiting her to standing and walking for two hours in an eight-hour workday (Tr. at 26), Estrada argues that the ALJ erred in concluding that her residual functional capacity permitted her to fulfill the requirements of her past relevant work as a machine operator.

The ALJ properly relied on Estrada's hearing testimony to determine the standing and walking requirements of her past relevant work, and those requirements did not exceed her residual functional capacity as assessed by the ALJ. At the hearing, Estrada testified that as a machine operator, she was allowed to work in a sitting position but was required to stand and walk in order to take parts that she worked on to be washed. (Tr. at 35.) The answers she gave to specific questions from the ALJ belie any assertion that she was required to stand or walk for more than two hours per day at that job:

> Q: And for the majority of the day you'd be sitting down to perform that job?

- 4 -

> A: It would be both ways. Standing or sitting.
> Q: *Would you[r] employer permit you to sit all day to perform that job?*
> A: *Yes.*
> Q: About how many times a day did you have to get up to move the parts?
> A: Whenever the bucket of – it would take about an hour that it would take to fill this basket of screws or parts, to take them to wash.
> Q: *About an hour a day or an hour at a time?*
> A: *One or two hours per day.*

(Tr. at 35-36 (emphasis added).) Considering Estrada's testimony on the issue, the ALJ could properly have found that Estrada's past work as a machine operator allowed her to "sit all day" and to stand and walk only "[o]ne or two hours per day." Given that the ALJ assessed Estrada as having the residual functional capacity to stand and walk at least two hours per day, the machine operator position would fall within Estrada's limits as assessed by the ALJ.

## V.    **Calculation of Estrada's Residual Functional Capacity**

Estrada next argues that the ALJ erred in calculating her residual functional capacity. Estrada contends that the ALJ committed legal error in calculating her residual functional capacity by (1) discrediting the opinion evidence from Dr. Sandoval, Dr. Lopez and Dr. Sanders, all of whom were treating physicians, and (2) discrediting Estrada's own subjective pain testimony.

### A.    **The ALJ Properly Discredited the Opinion Evidence Supplied by Estrada's Treating Physicians**

According to Social Security Administration regulations, physicians' opinions on residual functional capacity are not "medical opinions" requiring deference by the Commissioner, and the source of such opinions are not given "any special significance" by the Commissioner. 20 C.F.R. § 404.1527(e). Part 404.1527(e) of Title 20, C.F.R., provides:

> (e) *Medical source opinions on issues reserved to the Commissioner.* Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability.
> (1) *Opinions that you are disabled.* We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .

- 5 -

> (2) *Other opinions on issues reserved to the Commissioner.* We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). *Although we consider opinions from medical sources on issues such as* whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, *your residual functional capacity (see §§ 404.1545 and 404.1546)*, or the application of vocational factors, *the final responsibility for deciding these issues is reserved to the Commissioner.*
> (3) *We will not give any special significance to the source of an opinion on issues reserved to the Commissioner* described in paragraphs (e)(1) and (e)(2) of this section.

*Id.* at 404.1527(e) (emphasis added). Nevertheless, this circuit has regularly required the ALJ to provide "clear and convincing" or "specific and legitimate" reasons for rejecting a treating physician's opinion, even on issues purportedly reserved to the Commissioner. *E.g.*, *Morgan v. Apfel*, 169 F.3d 595, 601 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179, 183-84 (9th Cir. 1995); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Where as here, a treating physician's opinion is controverted by other medical opinions in the record, the ALJ's decision to discredit the treating physician's opinion must be supported by "specific and legitimate reasons" based on substantial evidence in the record. *Morgan*, 169 F.3d at 600; *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Cotton*, 799 F.2d at 1408. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Cotton*, 799 F.2d at 1408). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id.* at 755.

In this case, the ALJ relied on the opinions of two State Agency medical consultants and Dr. Cunningham, an evaluating physician, in making his determination of Estrada's residual functional capacity. The ALJ determined that Estrada had the residual functional capacity to lift and carry no more than 20 pounds occasionally and 10 pounds frequently, walk and/ or stand at least 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour

1  workday. (Tr. at 26, ¶ 6.) The ALJ further found that kneeling, crawling, and working near
2  extreme temperatures were precluded, as was any more than occassional climbing, balancing,
3  stooping, and crouching. (*Id.*)

4  All three of Estrada's treating physicians filled out check-boxes assessing Estrada's
5  residual functional capacity as somewhat less than that determined by the ALJ. Dr.
6  Sandoval, for example, opined that Estrada could lift and carry 10 pounds occassionally and
7  less than 10 pounds frequently, and could stand and walk *less* than two hours in an eight-hour
8  workday. (Tr. at 139-140.) Dr. Sanders, in turn, concluded that Estrada could lift and carry
9  less than 10 pounds, could stand for *less* than two hours, and could walk *less* than one hour.
10 (Tr. at 257.) Finally, Dr. Lopez found that Estrada could lift and carry 10 pounds
11 occassionally, and could stand and walk *less* than two hours in an eight-hour workday. (Tr.
12 at 206-07.)

13 Where an examining physician supports his opinion with independent clinical
14 findings, his opinion will constitute substantial evidence supporting the ALJ's decision to
15 discredit the differing opinion of a treating physician. *Allen v. Heckler*, 749 F.2d 577, 579
16 (9th Cir. 1984) (holding that examining physician's opinion contradicting a treating
17 physician's opinion could be relied upon by ALJ as substantial evidence where the examining
18 physician's opinion was based on different findings than the findings of the treating
19 physician). Here, Dr. Cunningham, an examining physician, made specific and well-
20 explained clinical findings related to Estrada's limitations. (Tr. at 142-44.) Moreover, Dr.
21 Cunningham's opinion was supported by the opinions of two State Agency medical
22 consultants. As noted by the court in *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995),

> Reports of consultative physicians called in by the Secretary
> may serve as substantial evidence. Indeed, the analysis and
> opinion of an expert selected by the ALJ may be helpful to the
> ALJ's adjudication, and we should not impose burdensome
> procedural requirements that facilitate second-guessing the
> ALJ's resolution of conflicting medical testimony.

*Id.* at 1041 (citations, alterations and internal quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-

1  examining physicians may also serve as substantial evidence [supporting the rejection of a
2  treating physician's testimony in favor of an examining physician] when the opinions are
3  consistent with . . . other evidence in the record." (citations omitted)).  Dr. Cunningham and
4  the two State Agency medical consultants determined that Estrada could stand and walk for
5  at least two hours in an eight-hour day and could lift and carry 10 pounds frequently and 20
6  pounds occassionally.  (Tr. at 145, 150, 225.)  Their concerted opinions alone constitute
7  substantial evidence upon which the ALJ could base his disbelief of Estrada's treating
8  physicians' opinions regarding her residual functional capacity.

9  Nevertheless, the ALJ also provided individualized specific and legitimate reasons for
10 discrediting the opinions of each of Estrada's three treating doctors.  For example, the ALJ
11 discredited the opinion of Dr. Sandoval in part because Dr. Sandoval had not examined
12 Estrada since early 2002.  (Tr. 25, ¶ 1.)  In the time elapsed before Dr. Sandoval issued his
13 opinion in January of 2003, Estrada had undergone another surgery.  (Tr. at 22, ¶ 4.)
14 Moreover, Dr. Sandoval indicated that Estrada required a cane for ambulation, although no
15 doctor currently treating Estrada had suggested that a cane was necessary.  (Tr. at 25.)  Dr.
16 Sandoval's willingness to assert that Estrada still needed to use a cane long after having
17 ceased his treatment of her could reasonably lead the ALJ to conclude that Dr. Sandoval was
18 partial to Estrada or exaggerating to some extent her symptomology.

19 The ALJ likewise provided individualized reasons for discrediting the opinions of Dr.
20 Lopez.  The ALJ discredited the opinions of Dr. Lopez in part because Dr. Lopez indicated
21 that Estrada could not sit for more than one hour.  (Tr. at 25, ¶ 2; 206-07.)  Given that
22 nothing in the record or in Dr. Lopez's treatment notes would suggest Estrada had any issue
23 with sitting, the ALJ properly viewed such a restriction as cause for suspicion.  Moreover, Dr.
24 Lopez's 2004 opinion was different from a previous opinion Dr. Lopez had provided about
25 Estrada, and nothing had occurred in the interim to suggest Estrada's residual functional
26 capacity had declined.  (Tr. at 250-252.)  Such an extreme and unexplained change in opinion
27 can be a legitimate reason for discounting the validity of Dr. Lopez's assessments.  *See*
28 *Thomas*, 278 F.3d at 957 (holding that ALJ properly discounted validity of treating

- 8 -

physician's changed opinion where the record contained no information supporting a change of that opinion); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that ALJ properly rejected unexplained change in treating physician's opinion).

Finally, the ALJ discredited Dr. Sanders' opinion in part because his opinion was not supported by Dr. Sanders' own evaluation notes, which were themselves highly attenuated. (Tr. at 25, ¶ 2.) "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957 (citations omitted); *accord Batson*, 359 F.3d at 1195. Dr. Sanders cursorily indicated that Estrada had arthritis in her knee and shoulder problems, providing no further explanation for his conclusions about her residual functional capacity. (Tr. at 257.) Dr. Sanders' highly-specific conclusions based on such vague clinical findings could properly be accorded less weight by the ALJ. Moreover, Dr. Sanders subsequently opined in a follow-up examination that Estrada's knee had excellent range of motion and that there was no effusion. (Tr. at 264.) "Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner." *Morgan*, 169 F.3d at 601 (citations, alterations and internal quotations omitted). The ALJ could properly rely on the more recent report as a basis for discounting the prior.

The ALJ in this case faced conflicting medical opinions as to the severity of Estrada's physical limitations. The ALJ's decision to discount the treating physicians' check-box conclusions in favor of the well-articulated findings of Dr. Cunningham was within his discretion. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995) (holding that ALJ permissibly rejected evaluative physician's reports "because they were check-off reports that did not contain any explanation of the bases of their conclusions" (citations omitted)).

**B.     The ALJ Properly Discredited Estrada's Subjective Complaints of Pain**

"If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be 'clear and

1  convincing' and supported by specific findings." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th
2  Cir. 1993) (citations omitted); *accord Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). It
3  is undisputed here that the medical evidence established an objective basis for pain. The ALJ
4  found that Estrada suffered from three "severe" impairments, including an arthritic right knee
5  and knee pain specifically. (Tr. at 20, ¶ 3.) The Commissioner does not argue that Estrada
6  was malingering, and nothing in the record or the ALJ's report would affirmatively suggest
7  that she was. The ALJ therefore needed to provide clear and convincing reasons for
8  discounting the testimony of Estrada regarding her level of pain.

9        The ALJ provided clear and convincing reasons for discounting Estrada's pain
10 testimony. First and most predominantly, the ALJ relied on the absence of objective medical
11 support for Estrada's alleged levels of pain. The extent to which objective medical evidence
12 supports a claimant's contentions is relevant in assessing credibility and may be properly
13 relied upon by the ALJ. *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot
14 be rejected on the sole ground that it is not fully corroborated by objective medical evidence,
15 the medical evidence is still a relevant factor in determining the severity of the claimant's
16 pain and its disabling effects."). However, this circuit has noted that "'[e]xcess pain' is, by
17 definition, pain that is unsupported by objective medical findings. If the Secretary were free
18 to disbelieve excess-pain testimony solely on the ground that it was not supported by
19 objective medical findings, then the Secretary would be free to reject all excess-pain
20 testimony." *Cotton*, 799 F.2d at 1407. The ALJ therefore needed to provide at least some
21 additional reasons for disbelieving Estrada's pain testimony.

22       Taken together with the lack of supporting objective medical evidence, the additional
23 reasons provided by the ALJ were sufficient to discredit Estrada's excess pain testimony. To
24 begin with, the ALJ noted that Estrada uses a cane to ambulate but that no currently treating
25 physician had suggested she needed one. (Tr. at 24, ¶ 4.) If Estrada were truly in the amount
26 of pain she suggests and used a cane because of it, one would assume that she would have
27 discussed the pain and the cane with her treating physician. That no currently treating
28

- 10 -

1    physician mentioned Estrada's cane suggests that Estrada has not done so or that they did not
2    believe Estrada's pain justified use of a cane.
3         Similarly, the ALJ discredited Estrada in part because no treating physician had
4    suggested that she needed to elevate her leg two to three times per day. (Tr. at 24.) Like the
5    cane, if Estrada uses such a technique to alleviate her pain, she might have discussed it with
6    her physician. Again, Estrada apparently had not done so.
7         The ALJ also found not credible Estrada's testimony that she had trouble sitting for
8    extended periods of time. (Tr. at 24, ¶ 4.) The ALJ discounted this testimony in part because
9    it seemed contradicted by Estrada's other testimony that she watches television and listens
10   to the radio for most of the day. (*Id.*) Inconsistency in a claimant's testimony is a proper
11   basis for discrediting the testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).
12   The ALJ's inference that Estrada watches television and listens to the radio in a sitting
13   position is not unreasonable in light of Estrada's nonspecific testimony on the issue, and the
14   ALJ's decision to partially disbelieve Estrada on that basis was therefore not improper. *See*
15   *Rollins*, 261 F.3d at 857 (holding that although ALJ's interpretation of claimant's testimony
16   was not the only reasonable one, it was a reasonable interpretation and the court should
17   therefore not second-guess it).
18        Finally, the ALJ discredited Estrada's depression testimony based in part on the fact
19   that she denied any mental health treatment. The court places no importance on the ALJ's
20   rejection of this testimony because it is largely irrelevant to the ALJ's determination of
21   Estrada's ability to sit, stand and walk, which were the relevant limitations in his decision.
22        Although the ALJ properly did not rely solely on the lack of supporting medical
23   evidence in discrediting Estrada's testimony, substantial reliance in this case was proper.
24   "[A] claimant's self-serving statements may be disregarded to the extent they are unsupported
25   by objective findings." *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (citations
26   omitted). Nothing in the record substantiates Estrada's claims of severe pain, instead
27   suggesting only that Estrada suffers from "intermittent," "mild" and "minimal" impairments.
28   (*E.g.* Tr. at 144, 284, 260; *see also id.* at 264, 154.) The one ailment potentially engendering

1 severe pain, her right knee, was noted by her treating physician to be functioning properly
2 in follow-up exam. (*Id.* at 264.) When combined with the ALJ's other reasons for
3 discrediting Estrada's pain testimony, the court finds the ALJ's explanation clear and
4 convincing.

5      IT IS THEREFORE ORDERED that the Commissioner's motion for summary
6 judgment (doc. # 21) is granted. Estrada's motion for summary judgment (doc. # 14) is
7 denied.

8      IT IS FURTHER ORDERED that the clerk shall enter judgment in favor of Defendant
9 and that Plaintiff take nothing. The clerk shall terminate this case.

10      DATED this 2nd day of May 2006.

                                                           Neil V. Wake
                                                  United States District Judge